UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **QUENTIN BORGES-SILVA,**<br><br>**Plaintiff,**<br><br>v.<br><br>**JANE NISHIDA,**<br>*Former Acting Administrator of the U.S. Environmental Protection Agency,*<br><br>**Defendant.** | No. 21-cv-474-ZMF |

**MEMORANDUM OPINION**

On February 16, 2020, the U.S. Environmental Protection Agency ("EPA") terminated Plaintiff Quentin Borges-Silva ("Borges-Silva") for unacceptable service. Borges-Silva sued the EPA Administrator ("Defendant") for wrongful termination,[1] claiming that the EPA unlawfully discriminated against him based on his age and gender and retaliated against him for complaining about a hostile work environment. Pending before the Court is Defendant's Motion for Summary Judgment, which the Court will GRANT.

---

[1] When Plaintiff filed this suit, Jane Nishida served as the Acting Administrator of the EPA. Now, Administrator Michael S. Regan is the proper defendant in this case. *See* 42 U.S.C. § 2000e-16(c).

1

I.  **BACKGROUND**[2]

    A.    <u>Factual Background</u>[3]

        1.    *EPA Employment and Prior Protected Activity*

Borges-Silva, a man born in 1965, *see* Def.'s Mem. P. & A. Supp. Mot. Summ. J. ("Def.'s Mem.") 6, ECF No. 14-1, was an Environmental Protection Specialist, GS-13,[4] in the EPA's Communication Services Branch ("Branch"), Field and External Affairs Division ("Division"), Office of Pesticide Programs, Office of Chemical Safety and Pollution Prevention ("Office"), *see* Def.'s Statement of Material Facts ("Def.'s Material Facts") ¶ 1, ECF No. 14-2. His primary

---

[2] Although each exhibit and submission from the parties in support of and in opposition to the pending motions has been reviewed, only those exhibits necessary to provide context for the resolution of the pending motions are cited herein.

[3] Plaintiff admitted thirty-eight out of forty-three of the statements in Defendant's Statement of Undisputed Facts. *See* Pl.'s Resp. Def.'s Statement of Material Facts ("Pl.'s Resp."), ECF No. 22-1. These admitted statements largely form the factual background. Embedded in Plaintiff's Opposition to Defendant's Motion for Summary Judgment, Plaintiff included a twenty-four-page "Statement of Counter-Facts," listing 161 largely redundant statements that regularly mix argument and fact. *See* Pl.'s Opp'n to Def.'s Mot. Summ. J. ("Pl.'s Opp'n"), ECF No. 22. Most of the statements are immaterial, as they do not bear on whether: (1) Defendant had a legitimate non-pretextual reason to terminate Plaintiff; or (2) Plaintiff can rebut this reason with evidence of pretext. "[L]iberally mix[ing] facts with argument . . . does nothing to assist the court in isolating the material facts, distinguishing disputed from undisputed facts, and identifying the pertinent parts of the record." *Robertson v. Am. Airlines, Inc.*, 239 F. Supp. 2d 5, 9 (D.D.C. 2002) (citing *Burke v. Gould*, 286 F.3d 513, 518–19 (D.C. Cir. 2002)).

Moreover, Plaintiff failed to comply with Local Civil Rule 7(h)(1) and the Court's Standing Order, which required him to "furnish precise citations to the portions of the record on which [he] rel[ies]." Standing Order in Civil Cases ("Standing Order") ¶ 13, ECF No. 10; *see* LCvR 7(h)(1). Plaintiff's Statement of Counter-Facts does not include proper citations to the record and instead relies on the original pagination of the documents. *See* Standing Order ¶ 13(b). As such, the Court will decline Plaintiff's invitation to sift through hundreds of pages of depositions and affidavits to determine what may, or may not, be a genuine issue of material disputed fact. *See Burke v. Gould*, 286 F.3d 513, 517–18 (D.C. Cir. 2002); *see also Lawrence v. Lew*, 156 F. Supp. 3d 149, 154–55 (D.D.C. 2016) (detailed discussion of Local Civil Rule 7(h) and litigants' obligation to comply).

[4] The EPA largely pays employees on the General Schedule ("GS") pay scale, which has fifteen levels. *See* Salary Table 2023-GS, OPM.Gov, https://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/salary-tables/pdf/2023/GS.pdf.

responsibility was responding to "webmail inquiries," which members of the public submitted via the Office's "Contact Us" webpage. *See id.* ¶ 5–6. At all times relevant to the instant suit, Branch Chief Gregory Siedschlag (male, born 1978) served as Borges-Silva's first-line supervisor, and Division Director Jackie Mosby (female, born 1960) oversaw the Branch. *See* Def.'s Material Facts ¶¶ 2–3; Def.'s Mem. at 8.

On June 28, 2019, Borges-Silva filed an Equal Employment Opportunity ("EEO") claim. *See* Pl.'s Opp'n, Ex. 5, Compl. Discrimination in Federal Government ("Pl.'s Compl.") 1, ECF No. 22-3. On June 9, 2022, Equal Employment Opportunity Commission ("EEOC") Administrative Judge ("AJ") Robert D. Rose ruled that Borges-Silva "was subjected to a hostile work environment based on his sex and prior EEO activity, and placed on a [performance improvement plan] in reprisal for his prior EEO activity." Pl.'s Mot. Issue Preclusion & Stay, Ex. 1, Liability Hearing Bench Decision & Order ("EEOC Liability Ruling") 18, ECF No. 16-1. AJ Rose dismissed the claim that Borges-Silva was harassed based on his age. *See id.* at 3.

        2.     *Webmail Backlog Develops*

During the 2019 federal government shutdown, which lasted from December 31, 2018, to January 29, 2019, the Office developed a backlog of approximately 300 unanswered webmail inquiries. *See* Def.'s Mot. Summ. J. ("Def.'s Mot."), Ex. 2, Dep. Quentin Borges-Silva ("Pl.'s 2021 Dep.") 6, ECF No. 14-6. On March 19, 2019—Siedschlag's second day as permanent Branch Chief—Siedschlag discovered this backlog. *See* Decl. Gregory B. Siedschlag ("Siedschlag Decl.") ¶ 6, ECF No. 14-3. The next day, Siedschlag expressed concerns about the backlog to Borges-Silva. *See* Def.'s Material Facts ¶ 12. That same day, Siedschlag tasked three other employees—Enid Chiu (female, born 1988, GS-12 Environmental Protection Specialist), Marilyn St. Fleur (female, born 1985, GS-13 Environmental Protection Specialist), and Isabella Bennett (female,

born 1993, GS-11 Environmental Protection Specialist)—with assisting Borges-Silva with the backlog. *See* Siedschlag Decl. ¶ 7; Def.'s Mot., Ex. 14, Table of Branch Employees 2, ECF No. 14-18. By March 29, 2019, the four employees reduced the backlog to forty-one webmail inquiries. *See* Def.'s Material Facts ¶ 18; Pl.'s Resp. at 2. Siedschlag requested that each employee track their time. *See* Siedschlag Decl. ¶ 8. Chiu completed seventy-five webmail responses in 400 minutes, for a rate of 5.3 minutes per response. *See* Def.'s Mot., Ex. 13, Table of Time Comparators 2, ECF No. 14-17. Bennett completed seventy webmail responses in 706 minutes, for a rate of 10.1 minutes per response. *See id.* St. Fleur completed seventy-two webmail responses in 725 minutes, for a rate of 10.1 minutes per response. *See id.* Borges-Silva did not provide usable data. *See* Siedschlag Decl. ¶ 8 n.3.

Over the next six months, the webmail backlog regrew. *See* Siedschlag Decl. ¶ 8. On May 22, 2019, the backlog totaled 134 unanswered inquiries. *See* Def.'s Mot., Ex. 4, Pl.'s Performance Notes 4, ECF No. 14-8. On July 5, 2019, the backlog totaled 234 unanswered inquiries. *See* Def.'s Mot., Ex. 3, Emails from Siedschlag to Pl. ("Siedschlag Emails") 3, ECF No. 14-7. By August 30, 2019, the backlog reached approximately 510 unanswered inquiries. *See id.* at 2. Throughout that time, Siedschlag repeatedly instructed Borges-Silva to address the backlog. *See* Siedschlag Decl. ¶ 9. For example, on July 5, 2019, Siedschlag tasked Borges-Silva with eliminating the backlog of 234 inquiries by August 30, 2019. *See* Siedschlag Emails at 3. And on September 4, 2019, Siedschlag asked Borges-Silva to eliminate the backlog of 510 inquiries by November 13, 2019. *See id.* at 2. Siedschlag later adjusted this deadline to November 27, 2019, to provide Borges-Silva with official time to work on his EEO affidavit. *See* Def.'s Mot., Ex. 1, Dep. Quentin Borges-Silva ("Pl.'s 2022 Dep.") 25, ECF No. 14-5.

4

### 3. *Defendant Places Borges-Silva on a Performance Improvement Plan*

On September 27, 2019, Siedschlag informed Borges-Silva of his intention to place him on a performance improvement plan ("PIP") for unacceptable performance. *See* Siedschlag Decl. ¶ 10. On October 23, 2019, Siedschlag formally placed Borges-Silva on a PIP. *See* Def.'s Mot., Ex. 6, Performance Improvement Plan ("Pl.'s PIP"), ECF No. 14-10. The PIP period lasted from October 28, 2019 to November 27, 2019. *See id.* at 2. The PIP required Borges-Silva to prepare an average of at least twenty-five webmail responses per workday. *See id.* at 6. Siedschlag met with Borges-Silva weekly throughout the PIP period to provide feedback and guidance. *See* Pl.'s 2022 Dep. at 25. Siedschlag instructed Borges-Silva to prioritize simple inquiries that could be completed in twenty minutes or less. *See id.* at 25–26, 28–29.

During the PIP period, Borges-Silva sent a total of 244 webmail responses at an average of 13.6 per day. *See* Def.'s Mot., Ex. 7, Notification of Performance Improvement Plan Results ("PIP Results") 5, ECF No. 14-11. Of these, Borges-Silva copied his responses from form response language 109 times verbatim and sixty-four times partially. *See id.* at 6. As of December 2, 2019, the Office had a backlog of approximately 700 webmail inquiries, some of which dated back to July 2019. *See* Pl.'s 2022 Dep. at 38; Siedschlag Decl. ¶ 15.

### 4. *Defendant Terminates Borges-Silva*

On January 17, 2020, Siedschlag proposed removing Borges-Silva for unacceptable service. *See* Def.'s Mot., Ex. 8, Notice of Proposed Removal for Unacceptable Performance ("Removal Notice") 2, ECF No. 14-12. Mosby served as the deciding official for the proposed removal. *See id.* at 7. On February 14, 2020, Mosby issued her decision to implement the proposed removal. *See* Def.'s Mot., Ex. 9, Decision on Notice of Proposed Removal ("Removal Decision")

2, ECF No. 14-13. On February 16, 2020, Defendant terminated Borges-Silva. *See* Def.'s Mot., Ex. 10, Notification of Personnel Action 2, ECF No. 14-14.

    B.    <u>Procedural History</u>

On February 24, 2021, Borges-Silva filed this suit. *See* Compl., ECF No. 1. On June 21, 2021, Defendant filed his Answer. *See* Answer, ECF No. 7. On July 20, 2021, the parties consented to proceed before a U.S. Magistrate Judge for all purposes, and the matter was referred to the undersigned. *See* Joint Notice Consent Assign. Mag. Judge., ECF No. 9; Min. Order (July 22, 2021).

Following discovery, Defendant moved for summary judgment. *See* Def.'s Mot. On July 27, 2022, Borges-Silva moved for issue preclusion based on the AJ's liability ruling and to stay the summary judgment briefing. *See* Pl.'s Mot. Issue Preclusion & Stay, ECF No. 16. On August 8, 2022, this Court denied Borges-Silva's motion and ordered him to raise any issue preclusion arguments in his opposition to Defendant's motion for summary judgment. *See* Min. Order (Aug. 8, 2022). On August 25, 2022, Borges-Silva filed his opposition. *See* Pl.'s Opp'n. On October 18, 2022, Defendant filed his reply. *See* Def.'s Reply Supp. Mot. Summ. J. ("Def.'s Reply"), ECF No. 25.

## II.    LEGAL STANDARD

To succeed on a motion for summary judgment, the moving party must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the initial

burden of demonstrating that there is no genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). If the moving party meets this burden, the nonmoving party must identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). In evaluating motions for summary judgment, the Court must review all evidence in the light most favorable to the nonmoving party and draw all inferences in the nonmoving party's favor. *See Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam). In doing so, the Court must not assess credibility or weigh the evidence. *See Barnett v. PA Consulting Grp., Inc.*, 715 F.3d 354, 358 (D.C. Cir. 2013). However, the nonmoving party "may not merely point to unsupported self-serving allegations, but must substantiate his allegations with sufficient probative evidence[.]" *Reed v. City of St. Charles, Mo.*, 561 F.3d 788, 790 (8th Cir. 2009) (quoting *Bass v. SBC Commc'ns, Inc.*, 418 F.3d 870, 872–73 (8th Cir. 2005)). A genuine issue for trial must be supported by affidavits, declarations, or other competent evidence. *See* Fed. R. Civ. P. 56(c). If the nonmoving party's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Liberty Lobby*, 477 U.S. at 249–50.

### III.   DISCUSSION

#### A.   Issue Preclusion

Under "the doctrine of issue preclusion[,] . . . 'once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.'" *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). A prior holding has a preclusive effect when (1) "the same issue now being raised [was previously] contested by the parties and submitted for judicial determination in the prior case[,]" (2) "the issue [was] actually and necessarily determined by a court of competent jurisdiction in that prior case[,]"

and (3) "preclusion in the second case [would] not work a basic unfairness to the party bound by the first determination." *Id.* "[T]he moving party bears the burden of proving all the elements of issue preclusion." *Lans v. Adduci Mastriani & Schaumberg L.L.P.*, 786 F. Supp. 2d 240, 303 (D.D.C. 2011) (citing *Athridge v. Aetna Cas. and Sur. Co.*, 351 F.3d 1166, 1171 (D.C. Cir. 2003)).

This Court is not foreclosed from deciding whether Borges-Silva's termination was retaliatory because the "same issue" is not raised in Borges-Silva's EEOC case and this case. *Yamaha Corp. of Am.*, 961 F.2d at 254. By Borges-Silva's own omission, the issue in the EEOC case is: "[w]as the PIP valid?" Pl.'s Opp'n at 30. However, the issues here are (1) whether Defendant articulated legitimate nonretaliatory and nondiscriminatory reasons for removing Borges-Silva and (2) whether Borges-Silva rebutted Defendant's articulated reasons with evidence of pretext. *See* Def.'s Reply at 15–16. Given that the AJ did not address these questions in his liability ruling, "[a]n assessment of the remaining elements of issue preclusion is, therefore, not necessary." *Lans*, 786 F. Supp. 2d at 312. Accordingly, the Court will proceed to consider the remaining issues in this case.

      B.      <u>Discrimination and Retaliation</u>

Title VII of the Civil Rights Act of 1964 ("Title VII") prohibits an employer from retaliating against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII]" or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). If a plaintiff cannot present direct evidence of discrimination or retaliation, the court assesses his claims under the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973).

8

Under that framework, the employee must first make out a prima facie case of retaliation or discrimination under Title VII. *See Iyoha v. Architect of the Capitol*, 927 F.3d 561, 566 (D.C. Cir. 2019). To establish a prima facie case of discrimination, the plaintiff must show that "(1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Royall v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 548 F.3d 137, 144 (D.C. Cir. 2008) (cleaned up). To establish a prima facie case of retaliation, the plaintiff must show that (1) "he engaged in statutorily protected activity;" (2) "he suffered a materially adverse action by his employer;" and (3) "a causal link connects the two." *Iyoha*, 927 F.3d at 574. Next, the burden shifts to the employer to articulate a legitimate nondiscriminatory and nonretaliatory reason for its action. *See McGrath v. Clinton*, 666 F.3d 1377, 1383 (D.C. Cir. 2012). In doing so, "the employer must 'articulate specific reasons for that applicant's qualifications such as seniority, length of service in the same position, personal characteristics, general education, technical training, experience in comparable work or any combination of such criteria.'" *Figueroa v. Pompeo*, 923 F.3d 1078, 1089 (D.C. Cir. 2019) (quoting *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1076 (11th Cir. 2003)) (cleaned up). If the employer makes this showing, "the burden-shifting framework disappears." *Carter v. George Washington Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004). The "central inquiry" then becomes "whether the plaintiff produced sufficient evidence for a reasonable jury to find that the employer's asserted nondiscriminatory [and nonretaliatory] reason was not the actual reason and that the employer intentionally discriminated [or retaliated] against the plaintiff on a prohibited basis." *Iyoha*, 927 F.3d at 566 (quoting *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1226 (D.C. Cir. 2008)). In other words, the employee must demonstrate "pretext." *Jones v. Bernanke*, 557 F.3d 670, 679 (D.C. Cir. 2009).

When the employer properly presents a legitimate nondiscriminatory and nonretaliatory reason for the challenged action, the district court "need not—and *should not*—decide whether the plaintiff actually made out a prima facie case." *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008). Because Defendant asserted legitimate nondiscriminatory and nonretaliatory reasons for the challenged actions, the *Brady* shortcut applies. *See Barry v. Haaland*, No. 19-cv-3380, 2022 WL 4598518, at *6 (D.D.C. Sept. 29, 2022), *appeal filed*, No. 22-5268. Thus, the Court will proceed to step two.[5] *See id.*

> 1. *Defendant's Legitimate Nondiscriminatory and Nonretaliatory Justifications*

Four factors are "paramount in the analysis" of whether an employer has met its burden: (1) the employer must produce admissible evidence; (2) "the factfinder, if it believe[s] the evidence, must reasonably be able to find that the employer's action was motivated by a nondiscriminatory [and nonretaliatory] reason;" (3) the employer's justification must be "facially credible in light of the proffered evidence;" and (4) the employer must provide a "clear and

---

[5] At step one, Borges-Silva primarily relies on temporal evidence to establish causation. *See* Pl.'s Opp'n at 33–34. He argues that the proximity between his June 2019 EEO complaint and February 2020 termination establishes but-for causation. *See id.* Although "mere temporal proximity may establish causation," *Keys v. Donovan*, 37 F. Supp. 3d 368, 372 (D.D.C. 2014), to do so, "the temporal proximity must be very close," *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (cleaned up). Indeed, numerous courts have found that three and four-month periods between plaintiffs' protected activity and adverse employment actions were insufficient to establish causation based on temporal proximity. *See id.* at 273–74 (collecting cases).

Defendant terminated Borges-Silva eight months after Borges-Silva filed his EEO complaint. *See* Def.'s Material Facts ¶¶ 20, 40. The eight-month gap between the protected EEO activity and the challenged employment action "is too attenuated to establish causation based on temporal proximity alone." *Clinton v. Granholm*, No. 18-cv-991, 2021 WL 1166737, at *10 (D.D.C. Mar. 26, 2021); *see also Kline v. Springer,* No. 07-0451, 2009 WL 10701432, at *2 (D.D.C. June 29, 2009) ("No reasonable juror could find retaliation from these facts [where] there was a time lapse of from five to six months . . . ."). Therefore, Borges-Silva likely failed to establish causation. *See Clinton*, 2021 WL 1166737, at *10.

reasonably specific explanation" for its action. *Figueroa*, 923 F.3d at 1087–88 (cleaned up). Defendant provided legitimate nondiscriminatory and nonretaliatory reasons for terminating Borges-Silva.

First, Defendant "has supported its justifications with evidence that the Court may consider at summary judgment, including deposition testimony [and] supporting emails[.]" *Arnoldi v. Bd. of Trs.*, 557 F. Supp. 3d 105, 115 (D.D.C. 2021) (cleaned up). Specifically, Defendant provided sworn statements from Siedschlag and Mosby; Borges-Silva's deposition testimony; comparator information; communications between Siedschlag and Borges-Silva about performance metrics; documents related to Borges-Silva's PIP; and documents related to Borges-Silva's removal.[6] Borges-Silva does not challenge the admissibility of this evidence. *See generally* Pl.'s Opp'n; Pl.'s Resp.

Second, Defendant need only "raise a genuine issue of fact as to whether the employer intentionally discriminated [or retaliated] against the employee" to satisfy its step two burden. *Figueroa*, 923 F.3d at 1087 (cleaned up). Defendant did so: evidence of poor work performance and "failure to follow supervisory instructions [are] legitimate reason[s] for . . . termination." *Arnoldi*, 557 F. Supp. 3d at 115. Between March 20, 2019, and September 19, 2019, Siedschlag expressed concerns to Borges-Silva on at least twelve occasions about his lackluster progress in eliminating the webmail backlog. *See* Def.'s Material Facts ¶ 12; Siedschlag Decl. ¶ 9. On September 27, 2019, Siedschlag notified Borges-Silva of his intention to place him on a PIP for unacceptable performance, having determined that Borges-Silva's "output was too low relative to

---

[6] *See* Siedschlag Decl.; Pl.'s 2021 Dep.; Pl.'s 2022 Dep.; Siedschlag Emails; Pl.'s Performance Notes; Pl.'s Compl.; Pl.'s PIP; PIP Results; Removal Notice; Removal Decision; Notification of Personnel Action; Def.'s Mot., Ex. 11, Siedschlag's EEO Aff., ECF No. 14-15; Def.'s Mot., Ex. 12, Mosby's EEO Aff., ECF No. 14-16; Table of Branch Employees; Table of Time Comparators.

11

both [his] expectations and to keep up with incoming webmail inquiries." Siedschlag Decl. ¶ 10. Although the PIP required Borges-Silva to prepare at least twenty-five webmail responses per workday, *see* Pl.'s PIP at 6, Borges-Silva completed an average of 13.6, *see* PIP Results at 5. "[Borges-Silva's] subpar performance [is] evidence that [Defendant] had a legitimate [nondiscriminatory and] nonretaliatory explanation for terminating [him]." *Williams v. Smithsonian Inst.*, No. 14-cv-1900, 2019 WL 3859155, at *7 (D.D.C. Aug. 16, 2019) (citing *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005)). Therefore, a factfinder "could believe the evidence and reasonably conclude that [Defendant] was motivated by the nondiscriminatory [and nonretaliatory] reasons described [therein]." *Clinton*, 2021 WL 1166737, at *8.

Third, "the substantial evidence of [Borges-Silva's] substandard performance during his tenure . . . renders [Defendant's nonretaliatory and] nondiscriminatory explanation for separating him facially credible." *Williams*, 2019 WL 3859155, at *8. Siedschlag placed Borges-Silva on a PIP, which Mosby deemed to be reasonable. *See* Removal Decision at 3. After Borges-Silva failed to meet the PIP's requirements, Mosby determined that Borges-Silva's "incidents of unacceptable performance . . . [were] fully supported by the evidence." *See id.* at 3. As a result, Mosby implemented the proposed removal of Borges-Silva. *See id.* "Defendant's explanation is therefore legitimate." *Albert v. Perdue*, No. 17-cv-1572, 2019 WL 4575526, at *4 (D.D.C. Sept. 20, 2019) (citing *Figueroa*, 923 F.3d at 1088).

Fourth, Defendant's "explanations were sufficiently clear and specific to allow [Borges-Silva] ample opportunity to bring forward evidence to 'disprove . . . [D]efendant's reasons.'" *Clinton*, 2021 WL 1166737, at *9 (quoting *Figueroa*, 923 F.3d at 1088). Siedschlag tasked Borges-Silva—the Office's only employee primarily focused on responding to webmail inquiries—with reducing a significant webmail backlog. *See* Siedschlag Decl. ¶ 4; Def.'s Material Facts ¶ 5–7.

Borges-Silva does not contest that he failed to eliminate the backlog throughout 2019. *See* Pl.'s Opp'n at 34–35. "[Defendant's] consistent claim—one directly supported by the record—that it decided to discharge [Borges-Silva] because of his unsatisfactory job performance gave [Borges-Silva] a clear opportunity to challenge the asserted justification as merely a pretext for unlawful . . . discrimination [and retaliation.]" *Williams*, 2019 WL 3859155, at *8.

### 2. Borges-Silva's Evidence of Pretext

"The burden now shifts to [Borges-Silva] to provide sufficient evidence by which a reasonable jury could find [Defendant's] stated reason was pretext for discrimination [and] retaliation." *Albert*, 2019 WL 4575526, at *5 (citing *Brady*, 520 F.3d at 494).

To establish pretext, a plaintiff may show that the defendant provided a "false" explanation for its employment decision. *Lathram v. Snow*, 336 F.3d 1085, 1089 (D.C. Cir. 2003). "It is not enough for the plaintiff to show that a reason given for a job action is not just, or fair, or sensible." *Hogan v. Hayden*, 406 F. Supp. 3d 32, 46 (D.D.C. 2019) (quoting *Pignato v. Am. Trans Air, Inc.*, 14 F.3d 342, 349 (7th Cir. 1994)). Alternatively, an "employer's failure to follow established procedures or criteria" may also provide evidence of pretext allowing an employee to survive summary judgment. *Wang v. Wash. Metro. Area Transit Auth.*, 206 F. Supp. 3d 46, 68 (D.D.C. 2016) (quoting *Brady*, 520 F.3d at 495 n.3). Finally, a plaintiff may provide evidence of "variant treatment of similarly situated employees, discriminatory statements by decision[-]makers, [or] irregularities in the stated reasons for the adverse employment decision." *Bennett v. Solis*, 729 F. Supp. 2d 54, 60 (D.D.C. 2010) (citing *Brady*, 520 F.3d at 495 n.3).

First, Borges-Silva argues that "[t]here has been no objective documentation demonstrating [a legitimate basis for termination]." Pl.'s Opp'n at 34. However, record evidence consistently demonstrates that Defendant "notified [Borges-Silva] that his work was failing to meet

13

expectations and provided him with performance evaluations, both formal and informal, during his employment." *Williams*, 2019 WL 3859155, at *13; *see supra* n.6. Notably, Siedschlag expressed concerns about the webmail backlog as early as his second day as Branch Chief. *See* Def.'s Material Facts ¶ 12. And he continued to raise these concerns to Borges-Silva from March to November 2019. *See id.* ¶¶ 27, 30; Siedschlag Decl. ¶ 9. The concerns were based on objective metrics, including that lower-level employees cleared webmail inquiries significantly faster and that Borges-Silva could not clear the minimal threshold set in his PIP. *See* Removal Decision at 3; Siedschlag Decl. ¶ 8. Moreover, the deciding official, Mosby, independently vetted Siedschlag's recommendation before terminating Borges-Silva. *See* Removal Decision at 2–3. Borges-Silva does not "challenge[] these objectively measurable standards of his job performance." *Williams*, 2019 WL 3859155, at *12. Based on this evidence, Borges-Silva had ample notice that the webmail backlog was a cause for Defendant's concern. *See id.* at *13. "Because [Defendant's] stated belief about the underlying facts is reasonable in light of the evidence, a jury cannot conclude that [Defendant] is lying about the reasons for [Borges-Silva's] separation." *Id.* at *9 (cleaned up).

Second, Borges-Silva contends that Defendant disregarded established procedures by failing to transfer him to a different supervisor after he alleged harassment by Siedschlag, and by failing to give him adequate time to complete his complaint. *See* Pl.'s Opp'n at 34–35. In support, Borges-Silva cites a 1,577-page exhibit but provides no pin cite to the referenced policy. *See id.* This alone disqualifies this argument. *See Lawrence*, 156 F. Supp. 3d at 154. Nonetheless, Defendant—who provided the exact authority, *see* Def.'s Reply at 27 (citing Pl.'s Compl. at 1541–57)—"compl[ied] with established agency criteria or procedures in conjunction with [Borges-Silva's] separation." *Williams*, 2019 WL 3859155, at *9 (citing *Wang*, 206 F. Supp. 3d at 68). Although Defendant's policy states that "corrective action . . . may include . . . reassignment of the

14

alleged harasser[,]" it by no means makes this remedial measure mandatory on the agency. Pl.'s Compl. at 1550. And "failure to follow [Defendant's] own policies" where the "policy confer[red] substantial discretion on the decision maker . . . and [Borges-Silva] offered no evidence showing that [Defendant] applied the policy differently to [Borges-Silva] than it did to other employees" does not demonstrate pretext. *Chambers v. Fla. Dep't of Transp.*, 620 Fed. App'x 872, 879 (11th Cir. 2015).

Third, Borges-Silva asserts that colleagues of different ages and genders were not subject to the same scrutiny as him. *See* Pl.'s Opp'n at 37. "A plaintiff can establish pretext masking a discriminatory [or retaliatory] motive by presenting 'evidence suggesting that the employer treated other employees of a different [group] . . . more favorably in the same factual circumstances.'" *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 301 (D.C. Cir. 2015) (quoting *Brady*, 520 F.3d at 495). "But to serve as a comparator, the other employee must be 'similarly situated' to the plaintiff." *Clinton*, 2021 WL 1166737, at *11 (quoting *Burley*, 801 F.3d at 301). "Whether a comparator is similarly situated is typically a question for the fact finder, unless, of course, the plaintiff has no evidence from which a reasonable fact finder could conclude that the plaintiff met his burden on this issue." *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 895 (7th Cir. 2018).

Borges-Silva's proffered comparators—the three individuals assigned to assist with the 2019 federal government shutdown backlog—were not comparable. *See* Table of Branch Employees at 2; *see also Emami v. Bolden*, 241 F. Supp. 3d 673, 689–90 (E.D. Va. 2017) ("[A] showing of similarity to comparators 'would include evidence that the employees dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the

15

employer's treatment of them for it.'") (cleaned up) (quoting *Haywood v. Locke*, 387 Fed. App'x 355, 359 (4th Cir. 2010)). The individuals who assisted Borges-Silva only worked on reducing the webmail backlog for nine days, while simultaneously completing their other full-time responsibilities. *See* Siedschlag Decl. ¶¶ 7–8. Yet Borges-Silva's primary responsibility throughout 2019 was to respond to webmail inquiries. *See id.* at ¶ 8. As such, "a reasonable jury could not find that [the proffered comparators] and [Borges-Silva were] comparable 'in all material respects'" where the comparators "performed many of the same duties as [Borges-Silva,]" but not "all." *Day v. Carnahan*, No. 19-cv-5551, 2021 WL 4192069, at *4 (N.D. Ill. 2021). The differences between the proffered comparators and Borges-Silva are underscored by the fact that the other three Environmental Protection Specialists cleared webmail inquiries at a far faster rate than Borges-Silva. *Compare* Table of Comparators at 2, *with* PIP Results at 5. Comparators are "not similarly situated" where they "performed at a higher level than [the plaintiff]." *Chambers*, 620 Fed. App'x at 879. Furthermore, the proffered comparators "had [not] been placed on a PIP" and had "no[t] required the level of assistance that [Siedschlag] described [Borges-Silva] as needing." *Chambers*, 620 Fed. App'x at 879. Because Borges-Silva "fail[ed] to produce evidence that the proposed comparators were actually similarly situated to him, an inference of falsity or discrimination [or retaliation] is not reasonable, and summary judgment is appropriate." *Walker v. McCarthy*, 170 F. Supp. 3d 94, 108 (D.D.C. 2016) (cleaned up).

Fourth, "there can be no reasonable inference of [] discrimination where an individual just happens to be a member of a protected class—actionable discrimination only occurs when any employer acts *because of* the plaintiff's status as a member of a protected class." *Washington v. Chao*, 577 F. Supp. 2d 27, 42 (D.D.C. 2008) (cleaned up) (emphasis added). As such, "[c]ourts in our District have repeatedly held that a decision-maker's inclusion in the same protected class as

16

the terminated plaintiff cuts against any inference of discrimination." *Ranowsky v. Nat'l R.R. Passenger Corp.*, 244 F. Supp. 3d 138, 144 (D.D.C. 2017). Here, Borges-Silva and Siedschlag are both men, and Borges-Silva and Mosby are close in age. *See* Def.'s Mem. at 8; *see also Perry v. Shinseki*, 783 F. Supp. 2d 125, 138 (D.D.C. 2011) (decision-maker's membership in the same protected class as the plaintiff "weighs further against an inference of discrimination") (citing *Kelly v. Mills*, 677 F. Supp. 2d 206, 223 (D.D.C. 2010)). Thus, Borges-Silva's claim that Defendant had a discriminatory or retaliatory animus when terminating him is unavailing.

Finally, the Court is not a "super-personnel department that reexamines an entity's business decisions." *Jackson v. Gonzales*, 496 F.3d 703, 707 (D.C. Cir. 2007) (cleaned up). "[F]or the most part, [Borges-Silva] concedes the facts underlying Defendant's proffered reasons[,]" and his "contentions boil down to justifications of [his] conduct." *Arnoldi*, 557 F. Supp. 3d at 115; *see* Pl.'s Opp'n at 34–37. Even so, "[t]he Court's task is not to decide whether [Defendant] made the right calls, only whether [his] stated reasons were not the actual reasons. And [Borges-Silva's contentions] do not undermine [Defendant's] stated reasons." *Arnoldi*, 557 F. Supp. 3d at 118 (cleaned up). Accordingly, summary judgment is appropriate. *See Clinton*, 2021 WL 1166737, at *9–11.

## IV. CONCLUSION

For the foregoing reasons, the Court will GRANT Defendant's Motion for Summary Judgment in an accompanying order. As such, judgment is entered as a matter of law in favor of Defendant.

Date: January 13, 2023

_____
ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE